# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DOMINIQUE STINSON and OCTAVIA WILLIAMS, individually and on behalf of all others similarly situated, ) ) ) ) | |
| Plaintiffs, ) ) | Case No. 1:20-cv-04603 |
| v. ) ) ) | Honorable Judge John J. Tharp, Jr.<br>Magistrate Judge M. David Weisman |
| LCS COMMUNITY EMPLOYMENT LLC, LCS MOKENA LLC d/b/a CLARENDALE OF MOKENA, and ALGONQUIN OPERATIONS, LLC d/b/a CLARENDALE OF ALGONQUIN, ) ) ) ) ) ) | |
| Defendants. | |

## DEFENDANTS' MOTION TO STAY LITIGATION
## PENDING RESOLUTION OF PARALLEL STATE COURT PROCEEDINGS[1]

---

[1] In accord with the Court's standing order, the parties have conferred regarding an agreed briefing schedule for this Motion, as well as for Defendants' Joint Motion to Dismiss Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1). The parties respectfully propose that Plaintiffs be provided until January 15, 2021 to file Responses to each Motion, and that Defendant be provided until February 5, 2021 to file Replies.

Defendants LCS Community Employment LLC ("LCE"), LCS Mokena LLC d/b/a Clarendale of Mokena ("LCS Mokena"), and Algonquin Operations, LLC d/b/a Clarendale of Algonquin ("Algonquin Operations") (collectively, "Defendants"), by their undersigned counsel, respectfully move this Court to stay this matter pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). In support, Defendants state as follows.

## INTRODUCTION

The Court should stay this matter pending the resolution of an earlier-filed, parallel state court class action pending in the Circuit Court of Cook County, *Ambrose v. LCS Community Employment LLC, et al.*, No. 2019 CH 09912 ("*Ambrose*"). This case, like the *Ambrose* case, is a putative class action lawsuit asserting alleged violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. In their Complaint, Plaintiffs (hereinafter the "*Stinson* Plaintiffs") claim that while they were employed by LCE and working at assisted living facilities allegedly operated by Defendant LCS Mokena and Defendant Algonquin Operations, respectively, Defendants violated the BIPA by collecting, storing, and disseminating their biometric information. (Stinson Compl. ¶¶ 4-6, 14-15.)

Currently pending in the Circuit Court of Cook County, Illinois, however, is the earlier-filed, parallel *Ambrose* matter. (Ambrose Compl. at Ex. A hereto.) There, Kamilya Ambrose ("Ambrose"), another former employee of Defendant LCE, has pleaded the exact same legal and factual claims as do the *Stinson* Plaintiffs (and she is represented by one of the same law firms). In addition, one of the two proposed class definitions in *Ambrose* totally subsumes the proposed class definition in this case, such that the *Stinson* Plaintiffs, as well as all putative class members here, are also members of the putative class in *Ambrose*. As such, this case and the *Ambrose* case are "parallel proceedings" as that phrase is defined in *Colorado River* and its progeny.

Moreover, when the ten-factor test employed by the Seventh Circuit when deciding *Colorado River* abstention arguments is applied here, it is clear that this case must be stayed or dismissed until the Illinois court resolves the *Ambrose* case. In fact, eight (8) of the ten (10) factors outlined by the Seventh Circuit in *Depuy Synthes Sales, Inc. v. Orthola, Inc.*, 953 F.3d 469, 477 (7th Cir. 2020) overwhelmingly support abstention here.

Thus, Defendants respectfully request that this Court stay this matter until such time as the rulings in *Ambrose* enable a determination in this case "as to the preclusive effects of the state judgment or decisions." *CIGNA Healthcare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851-852 (7th Cir. 2002) (holding that circumstances of case warranted a stay under *Colorado River* until rulings in state court clarified whether any continued basis for a federal forum was warranted). At a minimum, Defendants request that this Court stay this matter until the *Ambrose* court rules on the class certification motion filed in that case.[2]

**Facts**

**I.　The *Stinson* Matter**

The *Stinson* Plaintiffs filed this case in the Circuit Court of Cook County on June 9, 2020, and LCE[3] timely removed it to this Court on August 5, 2020 pursuant to the Class Action Fairness Act ("CAFA"). (Dkt. No. 1.) Stinson and Williams are former employees of LCE who worked as certified nursing assistants at facilities LCE managed. Stinson worked at the Clarendale of Mokena

---

[2]　In addition to this Motion, Defendants have filed a Motion to Dismiss Plaintiffs' Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) (Doc. No. 29, 31.) Because this Motion requests a stay of this litigation, Defendants respectfully submit that the Court should rule on this Motion before ruling on the Motion to Dismiss. In addition, although Defendants have requested a stay, they are cognizant that this Court has the discretion to dismiss the matter rather than stay it. *Commer. Forged Products v. Best Swivel Joints, L.P.*, No. 12 C 10250, 2013 U.S. Dist. LEXIS 130881, at *13 (N.D. Ill. Sep. 13, 2013) (Tharp, J.).

[3]　In both the *Stinson* and *Ambrose* cases, Plaintiffs have abbreviated Defendant LCS Community Employment LLC as "LCS." For purposes of clarity, we refer to it as "LCE," in light of the fact that another defendant in *Stinson* (LCS of Mokena) also uses the letters "LCS" in its name.

facility, which the *Stinson* Plaintiffs allege is operated by Defendant LCS Mokena, and Williams worked at the Clarendale of Algonquin, which they allege is operated by Defendant Algonquin Operations. (Dkt. No. 1, Ex. A, Stinson Compl., ¶¶ 1-5.)

The *Stinson* Plaintiffs allege that "Defendants" required them to "use a biometric time clock system to record their time worked," and that "Defendants required Plaintiffs and other employees to scan their hands in Defendants' biometric time clock each time they started and finished working each shift." (*Id.* ¶¶ 6-7.) They claim that Defendants thereby violated Sections 15(a), 15(b), and 15(d) of the BIPA.[4] On behalf of themselves and a putative class, they seek for each violation the greater of actual damages and liquidated damages of $1,000 for each negligent violation and/or $5,000 for each reckless or intentional violation under 740 ILCS 14/20(1)-(2), injunctive relief, and attorneys' fees and costs. (*Id.* at ¶¶ 53, 60, 67.)

Here, the proposed class is defined as: "Defendants' workers who scanned their hands in Defendants' biometric time clock system in Illinois between June 9, 2015 and the present without first executing a written release." (*Id.* ¶ 34.) The *Stinson* Plaintiffs filed a Motion for Class Certification while the case was pending in Cook County. (Dkt. No. 1, Ex. A at pp. 31-34.)

## II. The *Ambrose* Matter

Ambrose, another former employee of LCE (Ambrose Compl. ¶ 12), filed her putative class action Complaint on August 27, 2019, ten months before the *Stinson* Plaintiffs filed their

---

[4] Specifically, in Count I, the *Stinson* Plaintiffs allege that Defendants violated Section 15(b) of the BIPA by capturing or collecting Plaintiffs' and the putative Class's hand geometry scans and personal identifying information based on their hand geometry scans without first informing them in writing that Defendants were doing so. (*Id.* ¶¶ 50-52.) In Count II, they allege that Defendants violated Section 15(a) by possessing their hand geometry scans and personal identifying information based on their hand geometry scans without creating and following a written policy, made available to the public, establishing a retention schedule and destruction guidelines for biometric information. (*Id.* ¶ 58.) And in Count III, they allege that Defendants violated Section 15(d) by disclosing or otherwise disseminating Plaintiffs' and the putative Class's hand geometry scans and personal identifying information based on their hand geometry scans to Defendants' timekeeping vendor without first their consent. (*Id.* ¶ 65.)

Complaint. She also filed a class certification motion shortly thereafter. (Exhibit B.) Ambrose alleges that her employer, LCE, as well as Defendant Carrington Care, LLC (which Ambrose alleges operated the assisted living facility at which she worked) collected, used and stored her and others' biometric information when scanning their fingerprints in violation of the BIPA. (Ambrose Compl. ¶¶ 9, 20, 25.) Just as the *Stinson* Plaintiffs have alleged here, Ambrose claims that LCE and Carrington Care, LLC violated Sections 15(a), (b), and (d) of the BIPA.[5] The relief sought in *Ambrose* is exactly the same as that sought in *Stinson*: statutory or actual damages under 740 ILCS 14/20(1)-(2), injunctive relief, and attorneys' fees and costs. (*Id.* at ¶¶ 52, 62, 80.)

Ambrose seeks to represent two putative classes. The second class is far broader than the putative class in *Stinson*, and completely subsumes it. Thus, every proposed *Stinson* class member — including Stinson and Williams — fall within the second proposed class in *Ambrose*:

> All residents of the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed at a facility managed by LCS in Illinois.

(*Id.* ¶ 39.) Ambrose further alleges that LCE "is a for-profit limited liability company that manages senior living communities throughout the United States. It partners with over 140 communities to staff their facilities." (Ambrose Compl. ¶ 1.) This necessarily includes the Illinois facilities allegedly operated by Defendants LCS of Mokena (where Stinson worked) and Clarendale of Algonquin (where Williams worked). (Stinson Compl. ¶¶ 3-5.)

---

[5] Specifically, in Count I, Ambrose alleges that Defendants violated Section 15(a) of the BIPA by failing to make certain disclosures and obtain written releases from her and putative class members before allegedly obtaining their biometric identifiers or information and failing to publish a written policy with guidelines for the retention and destruction of biometric data. (*Id.* ¶¶ 50-51.) In Count II, Ambrose claims that Defendants violated Section 15(b) of the BIPA by collecting her and other putative class members' biometric information without written consent. (*Id.* ¶¶ 54, 59.) And in Count III, she claims that Defendants violated Section 15(d) by failing to obtain consent from her and putative class members before allegedly disclosing their biometric identifiers or information to third parties. (*Id.* at ¶¶ 66-67.)

4

**Argument**

The Seventh Circuit employs a two-step analysis in deciding whether abstention pursuant to the abstention doctrine articulated in *Colorado River* is appropriate, and both of those steps are satisfied here. *Depuy*, 953 F.3d at 477 (affirming decision to abstain from federal case in favor of parallel state proceeding). The first step is to determine "whether the concurrent state and federal actions are actually parallel." *Id.* "Once it is established that the suits are parallel, the court must consider a number of nonexclusive factors that might demonstrate the existence of exceptional circumstances" for the federal court to abstain from exercising jurisdiction. *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004) (affirming decision to stay federal case) (quotations omitted).

Here, the *Ambrose* and *Stinson* matters are parallel proceedings. Further, the ten factors articulated by the Seventh Circuit with respect to whether abstention is appropriate consistent with *Colorado River* heavily weigh in favor of this Court abstaining from exercising jurisdiction, with eight (8) out of ten (10) of those factors weighing convincingly in favor of abstention.

**I. The *Stinson* and *Ambrose* Matters are Parallel.**

"The threshold question in applying *Colorado River* abstention is whether the state and federal cases are parallel; that is, whether substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Commer. Forged Products v. Best Swivel Joints, L.P.*, No. 12 C 10250, 2013 U.S. Dist. LEXIS 130881, at *3 (N.D. Ill. Sep. 13, 2013) (Tharp, J.). The parties and claims need not be identical, so long as there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Depuy*, 953 F.3d at 477-78. As we explain below, *Stinson* and *Ambrose* are parallel in every relevant respect.

### A. The Cases Contain Substantially the Same Parties

#### 1. Plaintiffs

Plaintiffs Ambrose, Stinson, and Williams have the exact same interests: to serve as class representatives to redress alleged violations of the BIPA on behalf of themselves and a putative class against their former employer, LCE, and the respective defendant facility entities. Thus, although the individually named Plaintiffs in each action are different, the interests of the *Stinson* Plaintiffs are "similar to or represented by the [*Ambrose*] class members." *Jacobson v. City of Chicago*, 233 F. Supp. 2d 1001, 1007 (N.D. Ill. 2002). Indeed, the proposed class definitions in *Ambrose* and *Stinson* overlap, with the far broader second proposed class definition in *Ambrose* subsuming the proposed class in *Stinson*. Further, the claims of Stinson and Williams squarely fall within the second proposed class in *Ambrose*, and Stinson and Williams are putative class members in *Ambrose*. And the Plaintiffs in both cases are represented by the same counsel. Thus, *Ambrose* provides a vehicle for litigation of their alleged BIPA claims.

District Courts within the Seventh Circuit have repeatedly held that *Colorado River* abstention is proper under these circumstances. In *Shyne v. Cook County Sheriff's Merit Board*, No. 18-cv-01231, 2018 U.S. Dist. LEXIS 241279, at *7 (N.D. Ill. June 18, 2018), the court granted a motion to stay pursuant to *Colorado River* where the parties to a federal class action were substantially the same as those in a state court class action, even where classes had not yet been certified in either case. *Id*. at **4-5. "Plaintiffs here . . . are not named as parties in the [state court] case. Nonetheless, the state case is a class action in which the plaintiffs seek to represent the same class of 230 officers with pending Merit Board cases that Plaintiffs seek to represent here." *Id.* at *7. "Thus, the named plaintiffs in each action would be included within the proposed

class in each action." *Id*. The parties also had "an identity of their interests" given that they sought the same legal relief, *id*. at **7-8, which is also true here. *Supra* at 3-4.

Likewise, in *Lake v. Neal*, No. 07 C 2742, 2007 U.S. Dist. LEXIS 118247, at *5 (N.D. Ill. Oct. 30, 2007), the plaintiff in a federal class action was not a named plaintiff in a similar state court class action. A class had not been certified in either matter. Nevertheless, the court explained that the state court case "is a putative class action, and the proposed class is, as far as this court can tell, identical to the class proposed by Lake in his federal suit." *Id*. at *5. "Lake also fails to mention in his response to defendants' [*Colorado River*] motion that he is a member of the putative state court class. . . ." *Id*. "The plaintiffs are, therefore, 'substantially the same' in both cases." *Id.; see also Jacobson v. City of Chicago*, 233 F. Supp. 2d 1001, 1007 (N.D. Ill. 2002) ("Although the [federal] class members technically are not parties to the [Illinois class] action, such identity is not required . . . . Both the [federal] and [state] plaintiffs, . . . represent or seek to represent classes of annuitants in the City's health care plans. . . . Thus, the parties in the state and federal actions are substantially similar . . . .").[6]

### 2.     Defendants

The Defendants in the *Stinson* and *Ambrose* cases are also substantially the same. LCE is the first-named Defendant in both cases, and it employed all three Plaintiffs (and the putative class members). Although the *Stinson* Plaintiffs have named individual facility entities as defendants in their respective cases in addition to LCE, both are LCE-staffed communities. (Stinson Compl. ¶¶ 1-6; Ambrose Compl. ¶¶ 1 (noting 140-plus communities nationwide affiliated with LCE).) Further, "the addition of [defendants] to a proceeding, by itself, does not destroy the parallel nature

---

[6] *See also Klabo v. Easy Heat, Inc.*, No. 3:02-CV-0877 AS, 2004 U.S. Dist. LEXIS 4459, at *13-14 (N.D. Ind. Feb. 6, 2004) ("Both [the federal and state] actions consist of classes, whether putative or certified, of persons injured by Defendant's allegedly defective heating device. . . . Mr. Klabo himself, the named plaintiff in the [federal] action, is a class member in the [state court] case.")

7

of state and federal proceedings." *Clark*, 376 F.3d at 686 (affirming abstention despite the addition of four defendants to the federal litigation which were not named in the state court case, noting that the parties must "be substantially the same — not completely identical," and "[w]hen we focus on the parties' litigation interests . . . the addition of these four defendants has little impact on the overall similarity of the disputes.") (emphasis supplied); *Interstate*, 847 F.2d at 1288 (same).

Here, the litigation interests of LCS of Mokena and Algonquin Operations are undoubtedly aligned with those of LCE. Plaintiffs themselves allege that "Defendants" acted in concert: every allegation of wrongdoing in the Complaint is made jointly against all three Defendants. (Stinson Compl. ¶¶ 29-43; 46-67.) Thus, to the extent the Court does not dismiss the facility-specific entities due to their lack of involvement as Defendants request in their concurrently-filed Motion to Dismiss, there is no question that all Defendants will present an aligned defense: that they did not violate the BIPA. *P&G v. Alberto-Culver Co.*, 99 C 1158, 1999 U.S. Dist. LEXIS 23140, at *9 (N.D. Ill. Apr. 27, 1999) (different defendants to federal and state actions shared "substantially similar litigation interests."); *Card v. Graystone Mortgage Corp.*, 2015 U.S. Dist. LEXIS 5961, at *10 (S.D. Ind. Jan. 20, 2015) (same where defendants had "aligned interests."). Moreover, all three Defendants here (and the Defendants in *Ambrose*) are represented by the undersigned counsel who confirm Defendants have common interests and a unified defense strategy.

Finally, the disposition of the *Ambrose* case will dispose of the claims here. The second proposed definition in *Ambrose* covers all individuals whose biometric information was allegedly collected, captured, received, otherwise obtained, or disclosed at any LCE-affiliated assisted living facility in Illinois — including those associated with LCS Mokena and Algonquin Operations — and it encompasses the named Plaintiffs in *Stinson* and every putative class member in *Stinson*.

8

(Ambrose Compl. ¶ 39.) Thus, for purposes of this analysis, the defendants in *Stinson* and *Ambrose* are substantially the same.

### B. The Same Claims Are Present in Each Case.

There can be no doubt that "substantially the same issues" are being litigated in the *Stinson* and *Ambrose* cases. *See Clark*, 376 F.3d at 686. The *Stinson* and *Ambrose* Plaintiffs have raised the same factual and legal claims: that LCE (and the respective Defendant entities for each facility) violated their rights under Sections 15(a), (b), and (d) of the BIPA by allegedly collecting their biometric information when they clocked in and out of work. *Depuy*, 953 F.3d at 477 (affirming abstention where claims in the federal and state actions were the same); *Tyrer v. City of South Beloit*, 456 F.3d 744, 752-53 (7th Cir. 2006) ("the two suits will be resolved largely by reference to the same evidence"). And the *Stinson* and *Ambrose* Plaintiffs seek the same relief. *See Clark*, 376 F.3d at 687 ("the relief requested in this case is substantially similar to that requested in the [state court] action," which was a factor weighing in favor of abstention).

For all of the above reasons, the *Stinson* and *Ambrose* matters are parallel. As such, there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Depuy*, 953 F.3d at 477-78. For example, if the *Ambrose* court certifies the second class, any judgment or settlement entered in that action will bind all members of that class — including Stinson and Williams. 735 ILCS 5/2-805 ("Any judgment entered in a class action brought under Section 2-801 of this Act shall be binding on all class members, as the class is defined by the court, except those who have been properly excluded from the class.").[7] Thus, such a ruling would necessarily preclude a re-litigation of the *Stinson* Plaintiffs' claims (or those of the putative class) in this forum, as the claims in *Stinson* and *Ambrose* are the same. The Court should therefore stay

---

[7] By filing this Motion, Defendants do not waive, and expressly reserve their right to, challenge any class certification motion in *Ambrose* or this matter.

9

this case until "the state action (including any appeals) concludes, or at any appropriate juncture before then, any party may move to lift the stay and proceed in a manner consistent with the state court's rulings and applicable preclusion law." *Rodriguez*, 2019 U.S. Dist. LEXIS 150646, at *18.

## II. Abstention Is Proper Under the Seventh Circuit's Ten-Factor Test.

Because *Stinson* and *Ambrose* are parallel, "the Court must next determine whether 'exceptional circumstances' make abstention appropriate." *Best*, 2013 U.S. Dist. LEXIS 130881, at *6. In doing so, courts should examine a non-exhaustive list of ten (10) factors, each of which is evaluated below. *Depuy*, 953 F.3d at 477. These ten factors overwhelmingly weigh in favor of this Court abstaining from exercising jurisdiction here.

### A. Whether the case concerns rights in property.

There is no "property" at issue here, so this factor can be disregarded. *Depuy*, 953 F.3d at 478 ("This case is not about property, and so Factor 1 can be ignored.").

### B. The inconvenience of the federal forum.

This factor does not support abstention, as the Federal and Cook County courthouses are blocks away from one another. Defendants, however, submit that this factor is of minimal importance, as no party will be inconvenienced by proceeding in state court. *Jacobson*, 233 F. Supp. 2d at 1008 (considering this factor largely neutral given short distance between federal and state courthouses in Chicago: "the two forums . . . are equally convenient to the parties."). This is particularly true where both *Stinson* and *Ambrose* were originally filed in Cook County.

### C. The desirability of consolidating litigation in one place (put otherwise, the value in avoiding "piecemeal" or broken-up proceedings).

This factor weighs heavily in favor of abstention. As this Court held in the *Best* case: "It is not an effective use of judicial resources to have courts in two jurisdictions examining the same legal and factual issues." *Best*, 2013 U.S. Dist. LEXIS 130881, at *12.

This is especially true under these circumstances. In both *Stinson* and *Ambrose*, the courts have been called upon to decide the exact same legal and factual issues. Further, the *Stinson* Plaintiffs are members of the putative classes in the *Ambrose* matter. Thus, were this dispute to continue proceeding as two separate class actions, a serious risk of inconsistent rulings would result, including any rulings on class certification. As the Seventh Circuit reaffirmed earlier this year, "functionally identical suits in two places creates a high risk of inconsistent results and wasteful duplication." *Depuy*, 953 F.3d at 478*; see also Lake*, 2007 U.S. Dist. LEXIS 118247, at *7-8 ("the suits concern identical underlying facts and involve plaintiffs who are members of both putative classes. The court therefore finds that there is a great risk of piecemeal litigation if this suit is allowed to proceed."); *Jacobson*, 233 F. Supp. 2d at 1008 ("The exercise of our jurisdiction potentially could lead to inconsistent judgments" with those in the state court class action).

Finally, the fact that both *Stinson* and *Ambrose* are class actions only amplifies the waste of judicial and party resources that will occur if the Court does not abstain here. "[T]he *Colorado River* doctrine first and foremost implicates judicial economy concerns, which primarily affect the court and the judicial system as a whole." *Kane v. Bank of America, National Ass'n*, No. 13 C 8053, 2017 U.S. Dist. LEXIS 77726, at *17 (N.D. Ill. May 23, 2017) (citing *Freed*, 756 F.3d at 1022). This is especially true in the class action context, as "the very nature of a class action is rooted in the efficient allocation of judicial resources to resolve numerous identical claims." *Romine v. Compuserve Corp.*, 1998 U.S. Dist. LEXIS 22980, at *16 (S.D. Ohio Mar. 26, 1998) (granting abstention motion). Even Plaintiffs admitted as much, with Stinson and Williams alleging in their Complaint that a "multiplicity of actions" would create "a hardship to the Class, to the Court, and to Defendant." (Stinson Compl. ¶ 41.) Similarly, Ambrose alleged that "[e]conomies of time, effort, and expense will be fostered and uniformity of decisions will be

11

ensured" with a "single adjudication" by a "single court." (Ambrose Compl. ¶ 43, emphasis added.) These interests will be directly undercut if two complex, parallel, and time-consuming class actions are allowed to proceed — all while creating the substantial risk of inconsistent rulings between this Court and the *Ambrose* court on an array of substantive issues.

### D. The order in which jurisdiction was obtained in the concurrent fora.

This factor also weighs in favor of abstention. *Ambrose* was filed in August 2019, and *Stinson* was filed 10 months later in June 2020. *Interstate Material Corp. v. Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988) (seven-month difference); *Rodriguez*, 2019 U.S. Dist. LEXIS 150646, at *14 (nine-month difference).

### E. The source of governing law—federal or state.

This factor strongly supports abstention, as all of the claims in *Stinson* and *Ambrose* matters are governed by Illinois state law under the BIPA. *See Best*, 2013 U.S. Dist. LEXIS 130881, at *11 ("In the Court's view, the strongest reasons for abstention are that (1) state law governs the claims, and therefore there is no federal interest and no particular expertise for this Court to apply . . . ."); *Freed*, 756 F.3d at 1022 (same); *Day v. Union Mines*, 862 F.2d 652, 660 (7th Cir. 1988).

### F. The adequacy of the state-court action to protect the federal plaintiff's rights.

There can be no question that the state court is an adequate forum for the *Stinson* Plaintiffs. "The state court is eminently competent to protect Plaintiffs' rights given that their claims turn on a question of state law." *Rodriguez*, 2019 U.S. Dist. LEXIS 150646, at *14 (citing *Ingalls v. AES Corp.*, 311 F. App'x 911, 915 (7th Cir. 2008)); *Lake*, 2007 U.S. Dist. LEXIS 118247, at *8.

### G. The relative progress of the state and federal proceedings.

This factor also weighs in favor of abstention, as the *Ambrose* matter is slightly farther along than this matter. In this case, concurrently with this Motion, Defendants have filed a Motion

to Dismiss pursuant to Federal Rules 12(b)(6) and 12(b)(1). In *Ambrose*, however, Defendants already filed a motion to dismiss on October 27, 2020, followed by a motion to stay the litigation pending the decisions from the Illinois Appellate Court and the Illinois Supreme Court.[8] After oral argument on November 2, 2020, the circuit court granted Defendants' motion. Here, no discovery has taken place, while in *Ambrose*, Plaintiff has already requested discovery in the form of the deposition of a potential witness. *Infra* at 6. As such, this factor too weighs in favor of this Court's abstention from jurisdiction over *Stinson*.[9]

### H. The presence or absence of concurrent jurisdiction.

This factor also counsels in favor of abstention. Both this Court and Illinois courts have jurisdiction over the claims in this case. In fact, the *Stinson* Plaintiffs originally filed their complaint in the Circuit Court of Cook County, and Defendants subsequently removed this matter to federal court under CAFA. As this Court held in *Best*, where the defendant moved for dismissal under *Colorado River* after having previously removed the action to federal court: "With respect to the concurrent jurisdiction factor . . .the plaintiff, filed suit in Illinois state court, deliberately eschewing a federal forum; it would be incongruous to pretend that [the plaintiff] cared about accessing a federal forum." *Best*, 2013 U.S. Dist. LEXIS 130881, at *9.

---

[8] Defendants' motion to stay was premised upon a pending ruling from the Illinois Appellate Court for the First District in *Tims v. Black Horse Carriers, Inc.*, Case No. 1-20-0563 (1st Dist.) ("*Tims*") as to the applicable statute of limitations in BIPA actions, and on a petition for leave to appeal to the Illinois Supreme Court in *McDonald v. Symphony Bronzeville Park, LLC*, Case No. 1-19-2398 (1st Dist.) ("*McDonald*") on the issue whether the Illinois Workers Compensation Act preempts statutory claims for damages under the BIPA. On November 2, 2020, the court granted that Motion. (Ex. C.)

[9] To the extent Plaintiffs complain about the progress of *Ambrose* given the court's decision to stay that matter, the state court has the power to manage its docket as it sees fit. And "it is [Plaintiffs] that [have] risked extra time by loading up different court systems with parallel actions." *Depuy*, 953 F.3d at 479.

13

## I. The availability of removal.

This factor "intends to prevent a federal court from hearing claims that are closely related to state proceedings that cannot be removed." *Freed*, 756 F.3d at 1023. Here, *Ambrose* cannot be removed, as the 30-day window to remove under 28 U.S.C. § 1446(b) has long since expired. Thus, granting this Motion would "prevent [this] court from hearing claims" that are closely related to the *Ambrose* case that cannot be removed, counseling in favor of abstention here. *Rodriguez*, 2019 U.S. Dist. LEXIS 150646, at *16 (finding that this factor weighed in favor of abstention).

## J. Whether the federal action is vexatious or contrived.

This factor also weighs in favor of abstention because the claims of the *Stinson* Plaintiffs could have been brought — and could still proceed as part of — the *Ambrose* case. As the Seventh Circuit has held, "this factor can weigh in favor of abstention when the claims and parties in the federal suit could have been included in the original state court proceeding." *Freed*, 756 F.3d at 1024; *Interstate Material Corp.*, 847 F.2d at 1289 ("Without presuming [plaintiff's] motives, we see no reason why all claims and all parties could not have been, and still could not be, part of one suit."). As discussed above, the claims of the *Stinson* Plaintiffs squarely fall within the second proposed class definition in *Ambrose*: the *Stinson* Plaintiffs are Illinois residents who claim that their biometric information was "collected, captured, received, otherwise obtained, or disclosed at a facility managed by [LCE] in Illinois." (Compl. ¶ 39.) As such, there is no reason why the *Stinson* Plaintiffs could not have been named Plaintiffs in the *Ambrose* case. *Jacobson*, 233 F. Supp. 2d at 1009 ("We question why Plaintiffs filed the instant suit rather than joining" the previously-filed state action).[10] In fact, the *Stinson* and *Ambrose* plaintiffs are represented by the same counsel.

---

[10] Defendants are aware of this Court's holding in *Best*, which noted that, because the defendants had removed the matter that they then moved to stay, the factor did not weigh in favor of abstention: "[Plaintiff] did not intend to bring this action as a 'federal' case; it is at [defendant's] behest that the case is now in federal court." *Id*. at *8. However, given the posture of this case — where the *Ambrose* Plaintiff's own class

14

There is no reason that their counsel could not have simply chosen to add Stinson and Williams as named plaintiffs, and LCS of Mokena and Algonquin Operations as named defendants in the *Ambrose* matter. To the extent Plaintiffs argue that it would not have been appropriate to include claims against different operating entities in a single lawsuit, such an argument is directly undercut by the fact that they did just that in this matter, naming both LCS of Mokena and Algonquin Operations as named defendants in a single action.

## Conclusion

This case and the *Ambrose* case are parallel proceedings, and almost every factor that the Seventh Circuit instructs federal courts to review in deciding whether to abstain overwhelmingly weighs in favor of abstention here. This Court has the discretion to abstain from exercising its jurisdiction here, and Defendants respectfully request that the Court stay this matter pending either the resolution of the *Ambrose* matter or further rulings by that Court that would inform this Court whether any possibility of continued federal judicial involvement is warranted (*e.g.,* a ruling on the class certification motion in *Ambrose*), or grant any further relief deemed just and appropriate consistent with applicable precedent in this District. *See Shyne*, 2018 U.S. Dist. LEXIS 241279, at *13 ("there are ample grounds for abstaining under *Colorado River*. As such, this action will be stayed until the resolution of the [state court class action] case"); *Lake*, 2007 U.S. Dist. LEXIS 118247, at *5 (same); *Jacobson*, 233 F. Supp. 2d at 1009 (same).

**WHEREFORE,** for the reasons stated herein, Defendants respectfully request that the Court grant the instant Motion and stay this matter until the resolution of the *Ambrose* matter, or at a minimum, until the *Ambrose* court rules on a class certification motion in that case, and enter any further relief it deems just and appropriate.

---

definition includes the *Stinson* Plaintiffs — there is "no reason why all claims and all parties could not have been, and still could not be, part of one suit." *Interstate*, 847 F.2d at 1289

15

Dated: December 14, 2020 Respectfully submitted,

**DEFENDANTS LCS COMMUNITY EMPLOYMENT LLC; LCS MOKENA LLC D/B/A CLARENDALE OF MOKENA; AND ALGONQUIN OPERATIONS, LLC D/B/A CLARENDALE OF ALGONQUIN**

By: */s/ Jason A. Selvey*

One of Their Attorneys

Jason A. Selvey
Jody Kahn Mason
Jonathan B. Cifonelli
Jackson Lewis P.C.
150 North Michigan Avenue, Suite 2500
Chicago, IL 60601
Tel.: 312.787.4949
Fax: 312.787.4995
Jason.Selvey@jacksonlewis.com
Jody.Mason@jacksonlewis.com
Jonathan.Cifonelli@jacksonlewis.com

## CERTIFICATE OF SERVICE

I, Jason A. Selvey, an attorney, certify that on December 14, 2020, I caused a true and correct copy of the attached *Defendants' Motion to Stay Litigation Pending Resolution of Parallel State Court Proceedings,* to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system.

                                                          */s/ Jason A. Selvey*